# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RODNEY L. LASS,

                    Petitioner,

          v.                                    Case No. 21-CV-578

JASON WELLS,

                    Respondent.

## DECISION AND ORDER

### 1. Background

Rodney L. Lass beat, raped, stabbed, and strangled his girlfriend, Caroline,[1] over the span of their years-long relationship. (ECF No. 12-1.) Following a nine-day trial, a jury found him guilty of various offenses and the court sentenced him to decades in prison. (ECF No. 12-1.) After unsuccessfully challenging his convictions in state court Lass has turned to federal court with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.)

---

[1] This is a pseudonym used in the state proceedings.

Lass argues he is entitled to relief on three grounds: vindictive prosecution; ineffective assistance of trial counsel; and denial of the right to self-representation.[2] All parties have consented to the full jurisdiction of a magistrate judge. *See* 28 U.S.C. § 636(c); (ECF Nos. 3; 10; 11).

## 2. Applicable Law

A person incarcerated pursuant to a state court judgment who seeks habeas corpus relief in federal court faces a high hurdle. *Turner v. Brannon-Dortch*, 21 F.4th 992, 995 (7th Cir. 2022). Before the court can even get to the merits of a claim, the petitioner must show that the claim is cognizable in habeas, *see*, *e.g.*, 28 U.S.C. § 2254(d)(1) (requiring that a claim must allege a violation of "clearly established Federal law"); *Stone v. Powell*, 428 U.S. 465 (1976) (holding that violations of the Fourth Amendment generally do not merit habeas relief), that he has exhausted his state court remedies, 28 U.S.C. § 2254(b)(1), that he filed his petition within one year of his conviction becoming final or the claim arising, 28 U.S.C. § 2254(d)(1), that he has not filed a prior habeas petition regarding the same conviction, 28 U.S.C. § 2244(d), and that the state court

---

[2] Lass's petition contained a fourth ground wherein he argued that the court relied on inaccurate information in sentencing. (ECF No. 1 at 10.) He has abandoned this claim by not developing it in his brief in support of his petition. (ECF No. 30); *Davis v. Cromwell*, No. 13-cv-1220-bhl, 2020 U.S. Dist. LEXIS 211259, at *1 (E.D. Wis. Nov. 12, 2020); *Whyte v. Winkleski*, No. 12-CV-486, 2020 U.S. Dist. LEXIS 133345, at *9 (E.D. Wis. July 28, 2020); *Below v. Foster*, No. 17-CV-1709, 2019 U.S. Dist. LEXIS 236251, at *16 (E.D. Wis. June 14, 2019); *Starks v. Dittman*, No. 14-CV-1564, 2019 U.S. Dist. LEXIS 75593, at *24 (E.D. Wis. May 6, 2019); *Bates v. Baenen*, No. 11-CV-997, 2012 U.S. Dist. LEXIS 167956, at *11 (E.D. Wis. Nov. 27, 2012); *Braasch v. Grams*, No. 04-C-593, 2006 U.S. Dist. LEXIS 13390, at *34 (E.D. Wis. Mar. 8, 2006).

considered the claim on its merits (and did not deny it for independent state law reasons), *Beard v. Kindler*, 558 U.S. 53, 55 (2009).

Only if the petitioner clears these preliminary hurdles may the federal court consider the merits of a claim. And here, too, the bar is high. A habeas petitioner is entitled to relief only if "the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Turner*, 21 F.4th at 995 (quoting 28 U.S.C. § 2254(d)(1)). "This standard is difficult to meet." *Id.* (quoting *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (per curiam)).

Habeas relief is "not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). Rather, it is reserved for "extreme malfunctions in the state criminal justice systems." *Id.* at 103 (quoting *Jackson* v. *Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). Thus, a petitioner is not entitled to relief merely by showing that the state court's decision was wrong. The petitioner must show that the state court's decision was so wrong as to be unreasonable. *Mays*, 141 S. Ct. at 1149. A decision is unreasonable only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

### 3. Vindictive Prosecution

Lass was initially charged with two counts of misdemeanor battery and one count of disorderly conduct. The disorderly conduct count was dismissed (ECF No. 12-

11 at 37 (the reasons for its dismissal are not clear from the record)) and Lass proceeded to trial on the two battery counts, the first relating to events occurring on June 17, 2012 (ECF No. 12-10 at 76-77) and the latter relating to events occurring on June 30, 2012 (ECF No. 12-10 at 77). Assistant District Attorney Margaret Kunisch took the lead role at trial, although Assistant District Attorney Jennifer Williams, who at that time had the surname Hanson, also appeared. The jury trial before the Honorable Mary E. Triggiano ended shortly after it started.

During ADA Kunisch's direct examination of Caroline, the prosecutor asked if Lass said anything when he was choking her. Caroline testified, in part, that Lass said:

> You stupid bitch. You think you're going to get away from me? You think you're going to put me back in jail? I'm not going to jail for you. It's me or you. It's going to be -- it's going to be you. I'll take your life before you take mine. My voice is going to be the last voice you hear on this earth.

(ECF No. 12-11 at 26.) The court held an in-chambers conference regarding the statement about Lass going "back" to jail, and Lass elected not to move for a mistrial. (ECF No. 12-11 at 27-29.) At the conclusion of this conference ADA Williams told Lass's attorney that, if he moved for a mistrial and the motion was granted, she would file felony charges against Lass. (ECF No. 12-5 at 71, ¶ 4.)

Testimony resumed and, shortly thereafter, the state asked Caroline why she initially did not report these incidents to police. She responded:

> I never called the police on Rodney because -- it's kind of a twofold answer -- one, because I loved him, and, two, because he had always threatened me that if I called the police, if I pressed charges, that my daughter would

be kidnapped and raped in front of me and then cut into pieces and used
as fish food, that my body would never be found, tires burn really hot –

(ECF No. 12-11 at 33.)

This answer led to another conference, and this time Lass moved for a mistrial.
(ECF No. 12-11 at 35, 37-38.) The state, by Williams, opposed the motion (ECF No. 12-11
at 36), but the court granted it (ECF No. 12-11 at 38-39).

In the following months the state moved to dismiss the misdemeanor charges
and filed a new case, *see* Wis. Cir. Ct. Access, Milwaukee Cnty Cir. Ct Case No.
2013CF001603, available at https://wcca.wicourts.gov, charging Lass with three counts
of strangulation, two counts of aggravated battery, three counts of intimidation of a
victim, one count of second-degree sexual assault, and two counts of misdemeanor
battery. In all, the state alleged six different incidents of violence, one each occurring in
2008, 2009, 2010, and 2011, and the two June 2012 incidents that formed the basis for the
misdemeanor charges. But with respect to the two June 2012 incidents, in addition to
misdemeanor charges of battery, the state added to each incident felony charges of
strangulation and intimidation of a victim. The new felony case was assigned to the
Honorable Ellen R. Brostrom.

At a subsequent conference Williams told defense counsel that she was
personally dedicated to prosecuting Lass, and even though her assignment within the
District Attorney's Office was changing, she was going to stay on the case. She further

said that, even if she left the District Attorney's Office, she would come back and prosecute Lass pro bono. (ECF No. 12-5 at 72, ¶ 10.)

Lass moved to dismiss the felony charges on the ground that they were brought to punish him for exercising his right to a mistrial. Rather than holding a formal hearing where Lass would have been able to cross-examine Williams, Judge Brostrom accepted Williams's vague explanation for the new charges:

> I learned about the history of domestic violence from the victim in a face-to-face conversation at some point in my interaction with her, I know for a fact, in December, during – either before, during, or after the misdemeanor trial.

> When she told me about the incidents, I was not aware whether police reports had been filed. I do not remember if she was able to, with specificity, explain that she made police reports. But I do remember learning from her, [Caroline], that is, that she had sought medical attention for her injuries she claimed were inflicted by Rodney Lass.

> At that point, I began to research whether or not I could bring additional charges, whether they were within the statute of limitation, which I found out later they were, and then I also discovered that there were police reports supporting what the victim was telling me. I don't remember when I learned about the police reports.

> But I can tell the Court, in all candor, when I heard about what he had done to her to inflict these injuries in the past during the course of their relationship, considering my oath as a prosecutor, I was almost convinced that I had no choice but to file these charges. That explains my rationale.

(ECF No. 12-12 at 8-9.)

6

The circuit court denied Lass's motion, finding no vindictive prosecution, and explained that, while Williams's timing may have been "unfortunate," she had "a duty of candor" to let the defendant "know pertinent information." (ECF No. 31-10 at 10.)

When Lass raised the issue again in a motion for post-conviction relief he again requested an evidentiary hearing. Post-conviction proceedings were addressed by the Honorable Jeffrey A. Wagner, who concluded that an evidentiary hearing was unnecessary. He stated:

> The court was fully aware of Attorney Haney's affidavit and the State's position, and thus, it was not error to forego a formal evidentiary hearing for purposes of swearing both attorneys in. Judge Brostrom had sufficient information to make a ruling on the defendant's vindictive prosecution claim, and this court concurs with the result. Given that nothing new exists in support of the defendant's claim, the court declines to hold an evidentiary hearing in which the attorneys state the same thing under oath.

(ECF No. 1 at 26.)

The Wisconsin Court of Appeals concluded that the circuit court had correctly denied Lass an evidentiary hearing, stating, "We conclude that Lass's postconviction motion fails to allege facts that, if adduced at an evidentiary hearing, would entitle him to relief, either based on proof of a realistic likelihood of prosecutorial vindictiveness or of actual vindictiveness." *State v. Lass*, 2020 WI App 47, ¶ 20, 393 Wis. 2d 594, 947 N.W.2d 643, 2020 Wisc. App. LEXIS 290 (unpublished). The court continued, "And, if Lass means to suggest that a hearing is necessary merely because the prosecutor could be impeached with the commitment-to-personally-prosecute comment, this

misunderstands the standards necessary to trigger a postconviction evidentiary hearing. They are not fishing expeditions." *Id.*, ¶ 23.

The court of appeals went on to reject Lass's vindictive prosecution claim by noting that he failed to present evidence that Williams's statements that she discovered evidence of Lass's felony conduct only in conjunction with the misdemeanor trial were untrue. *Lass*, 2020 WI App 47, ¶ 22. It noted that, although Lass's attorney submitted an affidavit recounting Williams's statements, he did "not purport to quote the prosecutor, nor to describe particular actions of the prosecutor, conveying any message to trial counsel other than the simple prediction that a mistrial would lead to the filing of more serious charges." *Id.*, ¶ 23. Therefore, "it can be reasonably inferred that the prosecutor was doing so for the proper reasons noted by the circuit court," and Lass did not show that the circuit court's inferences were unreasonable. *Id.* It characterized defense counsel's understanding of Williams's statement as a "threat" as "an unexplained leap." *Id.*, ¶ 26.

When the government increases potential penalties or the court imposes a more severe sentence after a defendant successfully appeals his conviction, a presumption of vindictiveness arises. *United States v. Goodwin*, 457 U.S. 368, 372-77 (1982) (discussing *Blackledge v. Perry*, 417 U.S. 21 (1974); *North Carolina v. Pearce*, 395 U.S. 711 (1969)); *see also Texas v. McCullough*, 475 U.S. 134, 141 (1986) (noting that a presumption of vindictiveness may be rebutted). However, no presumption arises simply because the

8

government pursues additional charges after a defendant rejects a plea offer, *see Goodwin*, 457 U.S. at 377-80 (discussing *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663 (1978)), or after a defendant demanded a jury trial rather than a bench trial, *id.* at 383. "In short, the Supreme Court has applied a presumption of vindictiveness 'exclusively in the post-trial context' …." *Williams v. Bartow*, 481 F.3d 492, 504 (7th Cir. 2007) (quoting *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006)).

Because the new charges against Lass were added following a mistrial, "[t]he present case falls in between the Supreme Court's pretrial/post-conviction dichotomy." *Lane v. Lord*, 815 F.2d 876, 878 (2d Cir. 1987). The Wisconsin Court of Appeals did not apply the presumption of vindictiveness. As Lass correctly observes, "Whether a presumption of vindictiveness arises where the prosecutor increases the charges following the defendant's successful motion for mistrial is an open question in the federal law." (ECF No. 30 at 31.)

Because the Supreme Court has never held that a presumption of vindictiveness applies following a mistrial, the court of appeals' decision to not apply a presumption of vindictiveness was neither contrary to nor involved an unreasonable application of federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the habeas petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." (brackets and internal quotation marks omitted)); *see also Williams v. Bartow*, 481

F.3d 492, 502 (7th Cir. 2007) (noting that, because the Supreme Court has never held that a presumption of vindictiveness applies when prosecutors charge different criminal conduct following a defendant's successful appeal, a presumption will not apply to a vindictiveness claim in a habeas petition). Insofar as the Court's statement in *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S. Ct. 2098, 2102 (1974), that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness'" may be understood as expanding the presumption to instances where "a defendant … show[s] that the circumstances "pose a realistic likelihood of 'vindictiveness,'" *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001); *but see United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996) ("We presume that a prosecutor's decision to seek increased charges in a superseding indictment is valid. … [A] presumption of vindictiveness does not arise where, prior to trial, the prosecutor brings enhanced charges following the defendant's exercise of a procedural right."), Lass has again failed to show that the court of appeals erred. He has not, for example, pointed to any case where a court held that a presumption of vindictiveness arises following a defendant's motion for a mistrial.

Without the presumption of vindictiveness, it is Lass's burden to prove that Williams acted with actual vindictiveness. He must show that her decision to bring more severe charges following the mistrial was the result of "an improper prosecutorial motive" and "could not be justified as a proper exercise of prosecutorial discretion."

*Goodwin*, 457 U.S. at 380 n.12. In the view of the Court of Appeals for the Fourth Circuit, "[t]o establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001) (citing *Goodwin*, 457 U.S. at 380 n.12; *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000)); *see also United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996) ("in order to be successful on a claim of prosecutorial vindictiveness, a defendant must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication").

This translates into a "heavy burden" to prove that Williams pursued the additional charges "solely" to punish him for obtaining a mistrial and her decision "could not be justified as a proper exercise of prosecutorial discretion." *United States v. Wilson*, 262 F.3d 305, 316 (4th Cir. 2001) (quoting, in part, *Goodwin*, 457 U.S. at 380 n. 12.)

Lass argues that "the district court is obliged to conduct an evidentiary hearing into [his] claim of prosecutorial vindictiveness" (ECF No. 30 at 28) because the state "hearing was not a full and fair inquiry into the question" (ECF No. 30 at 27). "It involved merely an unsworn statement by the prosecutor concerning her reasons for issuing the additional charges. Lass was not permitted to cross-examine the prosecutor;

nor was he permitted to call the witnesses he had in court." (ECF No. 30 at 27-28.) He argues that the circuit court's denial of an evidentiary hearing on his vindictive prosecution claim constituted a violation of due process. (ECF Nos. 30 at 26-28; 45 at 2-5.)

> The operative standard for whether a habeas petitioner is entitled to an evidentiary hearing comes from 28 U.S.C. § 2254(e)(2), which provides that if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that … the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

*Williams v. Jackson*, 964 F.3d 621, 630 (7th Cir. 2020). However, if the petitioner did all he could to develop the record in the state court, he cannot be held accountable for the state's or the court's decisions. *See Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004). When the failure to develop the record is not attributable to the petitioner, § 2254(a)(2) does not apply and the court assesses the need for an evidentiary hearing under the pre-AEDPA standard. *Davis v. Lambert*, 388 F.3d 1052, 1061-62 (7th Cir. 2004). "Under pre-AEDPA standards, a federal evidentiary hearing is required only if (1) the petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing." *Davis v. Lambert*, 388 F.3d 1052, 1061-62 (7th Cir. 2004).

Lass alleges deficits in the state court procedures but does not suggest what he believes an evidentiary hearing would have revealed. He does not point to any disputed fact (aside from the ultimate fact as to Williams's subjective motivations). Williams did not dispute, and the state courts accepted, that she made the averments contained in the affidavit of Lass's attorney. There is no need to hold an evidentiary hearing so that Williams can repeat under oath the statements she made to the court.

As the court of appeals correctly noted, an evidentiary hearing is not a fishing expedition. *Id.*, ¶ 23. Perhaps Lass believes that, if only he could get Williams under oath, she will admit that she threw the book at him because she was upset he had obtained a mistrial and she would have to bring the case to trial again. But a petitioner's hope for a *Perry Mason* moment is not a basis for an evidentiary hearing.

The only material uncertainty is precisely when Williams learned that facts existed supporting felony charges. If she knew the full scope of the allegations and the evidence against Lass before the misdemeanor trial began, the fact that she chose to pursue felony charges only after Lass obtained a mistrial would tend to support an inference of vindictiveness. However, Lass has not demonstrated that an evidentiary hearing would show that. Williams has already stated that she did not remember whether it was before, during, or after the misdemeanor trial that she learned of the relevant facts, only that it was in December. (ECF No. 12-12 at 8.) The misdemeanor trial began December 3, 2012. (ECF No. 12-10 at 1.)

Williams obviously knew by December 4, 2012, that there was a factual basis for a felony charge, when she threatened to bring felony charges if Lass obtained a mistrial. But the extent of her knowledge is unclear. She could have been referring simply to the prospect of charging Lass with felony strangulation, which ADA Kunisch referred to in her opening statement (ECF No. 12-11 at 7) and Caroline testified to (ECF No. 12-11 at 26).

While Kunish's opening statement shows that the state knew of the strangulation allegation, that does not mean that Williams knew. Williams "did not originally handle the misdemeanor case … but came on board just prior to trial in that case on November 28, 2012." (ECF No. 1 at 23, fn. 1.)

Even if Lass could prove that, before the commencement of the misdemeanor trial, the state knew every detail that it relied on to eventually convict him of the felony charges, the court still could not say that the court of appeals' decision was unreasonable. By the time Williams threatened Lass, Caroline had already testified. A victim's testimony is often a game-changer in a prosecution. A prosecutor often does not know how strong her case is until a victim takes the stand. *See Williams v. Bartow*, 481 F.3d 492, 501 (7th Cir. 2007). This is especially true in domestic violence cases where simply getting the victim to appear in court is often a huge challenge.

And the prosecutors here had reasons to doubt that a case dependent on Caroline's testimony would result in conviction. Caroline was not initially a cooperative

or necessarily credible victim. (*See, e.g.*, ECF No. 12-11 at 4-5; 10-12 (stating that Caroline was intoxicated, attempted to run Lass down with her Jeep, was uncooperative with police, and was arrested and cited for obstruction as a result).) Faced with such a victim, prosecutors may reasonably choose to forego felony charges and hope for a quick guilty plea to misdemeanors, avoiding any challenges posed by a difficult victim. When that victim proves credible and reliable, a prosecutor may suddenly find a more complicated and serious case to be viable.

And sometimes a charging decision may come down to differences among prosecutors. *See United States v. Baldwin*, No. 22-1835, 2023 U.S. App. LEXIS 13242, at *4 (7th Cir. May 30, 2023) (noting that new prosecutors taking a fresh look at the case decided to bring charges). Williams did not initially charge Lass. She came on board only at trial and then had only a secondary role. She may have simply seen the case differently than her colleague. So when she saw the prospect of pursuing felony charges if the case happened to end in a mistrial, she warned the defendant of that possibility. While it might not be the likeliest explanation for her statement, it is plausible that Williams was simply giving defense counsel relevant information that would help him decide if he wanted to move for a mistrial. Litigants commonly forego motions for a mistrial if they believe that the risks associated with a retrial are greater than whatever unfairness they believe might merit a mistrial.

The Supreme Court has never held that a prosecutor violates due process when she brings more severe charges expressly because a defendant sought and obtained a mistrial. The Court has rejected the notion that pursuing more severe charges simply because a defendant exercises a constitutional right necessarily violates due process. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *United States v. Goodwin*, 457 U.S. 368, 383 (1982); *United States v. Barner*, 441 F.3d 1310, 1316 (11th Cir. 2006) (quoting *United States v. Miller*, 948 F.2d 631, 633 (10th Cir. 1991); citing *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000)).

In sum, Lass has failed to establish a basis for an evidentiary hearing or prove that Williams's actions were the result of actual vindictiveness. There are reasonable, non-vindictive explanations for Williams's decision to pursue felony charges following the mistrial in the misdemeanor case. Because the court cannot say that the court of appeals' decision was contrary to or involved an unreasonable application of federal law, Lass is not entitled to relief on his vindictive prosecution claim.

### 4. Ineffective Assistance of Trial Counsel

As a condition of his supervision following a conviction in another case, Lass was required to create a journal recounting his domestic abuse. This journal, in which he admitted many of the charged offenses, was admitted at trial. Although trial counsel moved to suppress the journal on the ground that it was privileged, Lass argues that his

trial counsel was ineffective for not moving to suppress the journal on the ground that the statements were involuntary.

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Hicks v. Hepp*, 871 F.3d 513, 525-26 (7th Cir. 2017).

As to the first prong, where the petitioner must show that his attorney's actions were unreasonable, the court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). "Deference is layered upon deference in these cases because federal courts must give 'both the state court and the defense attorney the benefit of the doubt.'" *Minnick*, 15 F.4th at 468 (quoting *Titlow*, 571 U.S. at 15).

As to the second prong, "[t]o establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694).

The court of appeals found that Lass's claim of ineffective assistance failed because he did not show that any alleged ineffectiveness was prejudicial. *Lass*, 2020 WI App 47, ¶ 27. Although he characterized the journals as the "centerpiece" of the state's case, the court of appeals found this assertion vague and undeveloped because he failed

17

"to explain the prejudicial significance of specific journal entries, considered in the context of all evidence and argument that was presented at trial." *Id*.

The respondent argues that, when the court of appeals found that Lass's claim was undeveloped, it rejected the claim on adequate and independent state law grounds. Consequently, Lass has procedurally defaulted his claim. (ECF No. 36 at 15-18.)

Lass disputes the court of appeals' conclusion that his claim was undeveloped and argues that the prejudice from the wrongful admission of what was effectively a confession was self-evident.

The court need not belabor questions of procedural default because, regardless of whether the claim is properly before this court, Lass would not be entitled to relief. A fundamental problem with Lass's claim that he was denied the effective assistance of counsel is the fact that he represented himself at trial. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

Granted, prior to his waiver of his right to counsel, defense counsel filed a motion to suppress the journals on the ground that they were privileged. The court denied that motion after a hearing, finding that Lass waived the privilege when he gave the journals to Caroline. (ECF No. 31-5 at 84.)

But then Lass waived his right to counsel and, now proceeding pro se, he again moved to suppress the journals, this time relying on a different privilege—Wis. Stat. § 905.02. (ECF No. 12-12 at 25.) The court denied that motion for the same reason it denied the motion filed on his behalf by defense counsel—that Lass waived the privilege when he provided the journals to Caroline. The fact that Lass raised new grounds for suppression, which the court considered, shows that Lass could have raised the voluntariness claim that he argues trial counsel was ineffective for not raising.

Even if the court were to look past the fact that Lass represented himself, his claim of ineffective assistance would still fail. Setting aside reasonableness, the evidence adduced in the subsequent evidentiary hearing and the factual findings by the circuit court demonstrate that Lass was not prejudiced because any motion to suppress on the ground that the journals were involuntary would have been denied.

While Lass may have been compelled to initially write the journals, the circuit court found that he voluntarily provided those journals to Caroline. She testified that Lass gave her the journals in an effort to show that he had changed and that she should renew their relationship. (ECF No. 31-5 at 25-28.) Although Lass disputes having given the journals to Caroline (ECF No. 30 at 41), he has not shown that the circuit court's finding to the contrary was "an unreasonable determination of the facts in light of the evidence presented …" 28 U.S.C. § 2254(d)(2).

19

By providing Caroline with the journals Lass was, in effect, voluntarily repeating his inculpatory statements. When a defendant voluntarily repeats a confession, that subsequent statement is admissible notwithstanding any prior coercion. *See, e.g., Lyons v. Oklahoma*, 322 U.S. 596, 603 (1944) ("The Fourteenth Amendment does not protect one who has admitted his guilt because of forbidden inducements against the use at trial of his subsequent confessions under all possible circumstances. The admissibility of the later confession depends upon the same test – is it voluntary.").

Because any motion to suppress on the ground that the journals were involuntary would have been denied, defense counsel's failure to file such a motion was neither unreasonable nor prejudicial. *See Carrion v. Butler*, 835 F.3d 764, 778 (7th Cir. 2016). Lass is not entitled to habeas relief on this claim.

### 5. Right to Self-Representation

When he was still represented by counsel, Lass requested to participate in the sidebar conferences. *Lass*, 2020 WI App 47, ¶ 31.[3] The court explained that this was not possible because Lass was in custody and the court's standard practice was to have conferences with the attorneys and then put the discussion on the record at the next break when the jury was out of the courtroom. *Id*. If Lass had any concerns about what was discussed at the sidebar, he would be able to raise them at that time. *Id*.

---

[3] It does not appear that the transcript of this pretrial conference is in the record before the court.

Lass then waived his right to counsel and began to represent himself. The court appointed Attorney Kristian Lindo as standby counsel, although Lindo's role was more of a hybrid nature in that the court permitted Lass to have Lindo represent him regarding certain matters. (*See, e.g.*, ECF No. 12-20 at 8); *see State v. Young*, 2009 WI App 110, ¶ 7, 320 Wis. 2d 702, 771 N.W.2d 928, 2009 Wisc. App. LEXIS 457 (unpublished) (noting that Wisconsin courts have discretion to allow hybrid representation and discussing *State v. Campbell*, 2006 WI 99, ¶¶66, 74, 294 Wis. 2d 100, 718 N.W.2d 649; *State v. Lehman*, 137 Wis. 2d 65, 81, 403 N.W.2d 438 (1987); *State v. Debra A. E.*, 188 Wis. 2d 111, 138, 523 N.W.2d 727 (1994)); *cf. McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("*Faretta* does not require a trial judge to permit 'hybrid' representation ….").

In a subsequent pretrial conference the court asked the parties, "[H]ow do you propose we handle sidebars?" (ECF No. 12-14 at 156.) Lindo responded: "I do need Mr. Lass to be a part of the sidebars. Hopefully there won't be a whole lot of them. I know it's a bit of a pain to get the jury out and bring them back in. I don't know, Judge." (ECF No. 12-14 at 156.) Lass added that, if he had been able to pay his bail, there would be no issue of him participating in sidebars. It was only because he lacked the financial resources to pay his bail that he was chained to the floor of the courtroom. (ECF No. 12-14 at 156-57.) The court responded that it was the sheriff's department's policy that he be shackled to the floor and the court was not going to change that. (ECF No. 12-14 at 157.) The court concluded, "So I guess what I would propose is that we try to do as

much just on the record in front of the jury and, you know, if – if we need to, I'll just have to send the jury out." (ECF No. 12-14 at 157.)

Notwithstanding having said that, the court did not follow this procedure for any of the 21 sidebar conferences it held during trial. (ECF No. 1 at 20, fn. 5.) Instead, it held conferences with Lindo and Williams and then put the discussion on the record at the next break. In the interim, Lass presumably relied on Lindo to convey to the court his position and to relay to him what was discussed.

At no point did Lass object to this procedure. The closest he came was when he expressed concern that the jurors might wonder why he was not getting up to join the attorneys at sidebar. He stated: "I do understand because my leg is being shackled I can't be part of side bars and I have the utmost confidence in Attorney Lindo. My only fear is the jury had to be like why isn't he getting up. You know, it kind of bothers me. It's worrisome to me." (ECF No. 12-17 at 55-56.) Although Lass now tries to cast this statement in a Sixth Amendment light—that he was concerned that jurors might believe he was not truly representing himself if he was not participating in the sidebar conferences (ECF No. 30 at 46-47 (citing *McKaskle*, 465 U.S. at 178 (1984)))—the statements actually seem to reflect a concern that the jurors would recognize that he was in custody. That was how the court understood it, assuaging Lass's concern by saying, "I think that any jury would understand that you don't put a defendant right next to a judge." (ECF No. 12-17 at 56.)

More significantly, Lass's statement tends to reflect his acquiescence to, if not approval of, his exclusion from the sidebar conferences and Lindo handling them. He described the prospect of the jurors' speculation as his "only fear" and expressed his "utmost confident in Attorney Lindo."

This is not a case where an objection under the Sixth Amendment would have obviously been futile given the court's prior rulings. To the contrary, if Lass regarded his exclusion from the sidebars as a violation of his Sixth Amendment right, all he had to do was remind the court of the practice it initially stated it would follow.

It was not until his appeal that Lass argued that his inability to participate in sidebar conferences violated his Sixth Amendment right to self-representation. The court of appeals found that Lass had forfeited that argument by not squarely raising an objection to the circuit court. *Lass*, 2020 WI App 47, ¶ 36.

"In federal habeas cases under § 2254, federal courts may not address the merits of a claim that the state court resolved on 'a state law ground that is both independent of the federal question and adequate to support the judgment.'" *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)). "[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review. And forfeiture

under state law is almost always such a ground." *Flint v. Carr*, 10 F.4th 786, 794 (7th Cir. 2021) (citations omitted)).

Lass argues that his procedural default should be excused because the court of appeals' application of its forfeiture rule was "freakish." (ECF No. 30 at 44-45 (citing *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000); *Crockett*, 807 F.3d at 167).)

Far from "a rule [that] has been applied 'infrequently, unexpectedly, or freakishly,'" *Crockett*, 807 F.3d at 167, the principle that claims cannot be presented for the first time on appeal is a basic and foundational rule of Wisconsin appellate law. *See, e.g.*, *State v. Dowdy*, 2012 WI 12, ¶5, 338 Wis. 2d 565, 571, 808 N.W.2d 691, 694 (citing *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980)). The court of appeals clearly relied on its procedural rule that, "[t]o preserve an alleged error for review, 'trial counsel or the party must object in a timely fashion with specificity to allow the court and counsel to review the objection and correct any potential error.'" *Lass*, 2020 WI App 47, ¶ 29 (quoting *State v. Torkelson*, 2007 WI App 272, ¶25, 306 Wis. 2d 673, 743 N.W.2d 511).

Nor was there anything freakish or unexpected about how the court of appeals applied the rule. As discussed above, at no point did Lass raise an objection about his exclusion from sidebar conferences that could be seen as reasonably implicating his Sixth Amendment right to self-representations. To the contrary, when he raised the issue he expressed concern only that the jury might surmise that he was in custody; he

seemed to otherwise accept the procedure the court employed and to have Lindo handle the conferences.

This is not an instance of Lass of failing merely to use certain magic words, such as "Sixth Amendment," when addressing his exclusion from the sidebars. It is the fact that he did nothing that could be seen as alerting the court to the Sixth Amendment component of a multi-faceted issue. When the court failed to include Lass in sidebar conferences it may well have been focused on the pragmatic logistical and security issues involved in enabling Lass to participate in sidebars and not recognized the Sixth Amendment implications. Or it may have presumed that, consistent with the hybrid role Lindo had assumed, Lass consented to Lindo handling the conferences. Courts depend on parties to raise arguments and issues it might not initially recognize.

Because the court of appeals rejected his self-representation for adequate and independent state law grounds, Lass has procedurally defaulted this claim. He has failed to show cause and prejudice to excuse his default. Therefore, the court must deny him relief on this claim.

## 6. Certificate of Appealability

Because the court finds that it must deny Lass's petition, the court must consider whether to grant him a certificate of appealability. *See* Rule 11, Rules Governing Section 2254 Cases. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). This requires more than showing merely that an appeal would not be frivolous. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). But this standard does not require that the applicant to show some judges would grant the petition. *Id*. Rather, when the court has denied the petition on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The certificate of appealability "shall indicate which specific issue or issues satisfy the showing required by [28 U.S.C. § 2253(c)(2)])."

Lass has presented a colorable claim of vindictive prosecution supported by statements by the prosecutor from which one reasonable inference is that she acted with actual vindictiveness. Although the court has concluded that Lass cannot prevail on this claim under the high standard posed by AEDPA, the court nonetheless finds the constitutional claim sufficiently debatable that a certificate of appealability as to this claim is appropriate. Accordingly, the court grants Lass a certificate of appealability as to Ground One of the petition (ECF No. 1 at 5). As to all other claims in the petition, jurists of reason would not find this court's resolution of those claims debatable or wrong. Therefore, the court denies Lass a certificate of appealability as to any other claim.

**IT IS THEREFORE ORDERED** that Lass's petition for a writ of habeas corpus is **denied**. A certificate of appealability is **granted** with respect to Lass's claim of vindictive

prosecution and denied as to all other claims. The Clerk shall enter judgment

accordingly.

Dated at Milwaukee, Wisconsin this 31st day of August, 2023.

*William E. Duffin*

WILLIAM E. DUFFIN
U.S. Magistrate Judge